**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| DARRAH ANDERSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.  2:25-cv-00280 |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMUNITY OPTIONS, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Darrah Anderson, by and through the undersigned counsel, files the within

Complaint in Civil Action against Defendant, Community Options, Inc., averring as follows:

**PARTIES**

1.      Plaintiff, Darrah Anderson ("Plaintiff") is an adult individual who resides in

Glassport, Pennsylvania 15045.

2.      Defendant, Community Options, Inc. ("Defendant") is a New Jersey nonprofit

corporation and is registered to do business in the Commonwealth of Pennsylvania utilizing a

registered business address of 4 East Ann Street, Millersville, Pennsylvania 17551.  Furthermore,

Defendant has business operations located at 900 Sarah Street, Suite 205, Pittsburgh, Pennsylvania

15203 (hereinafter, the "Facility").

**JURISDICTION AND VENUE**

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331 (hereinafter, the "Federal Question Jurisdiction"), as Plaintiff is advancing claims under the

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (Plaintiff claims arising under the FLSA are identified as the "Federal Law Claims").

4.     Plaintiff is also advancing claims under the Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* and the Pennsylvania Minimum Wage Act of 1968 34 P.S. § 231, *et esq.* (collectively, the "State Law Claims").

5.     This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

6.     Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.     Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

8.     Specifically, these events and omissions occurred within Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

9.     This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising

2

within Allegheny County is docketed within the Pittsburgh Division of the Western District

pursuant to Western District of Pennsylvania Local Rules, LCvR 3.

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

10.      This personal jurisdiction is proper over a defendant if the defendant is a registered

Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction

pursuant to 42 Pa. C.S. § 5301.

11.      42 Pa. C.S. § 5301 states: "The existence of any of the following relationships

between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to

enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such

person."   42 Pa. C.S. § 5301(a).   This exercise of personal jurisdiction is expanded to

"corporations" within 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations. --
> (i) Incorporation under or qualification as a foreign corporation
> under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its
> general business within this Commonwealth.

42  Pa. C.S. § 5301(a)(2).

12.      As discussed above, Defendant is a foreign nonprofit corporation, incorporated

under the laws of the Commonwealth of Pennsylvania and accordingly subjected itself to the

general jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa C.S. § 5301(a)(2)(i).

13.      Accordingly, Defendant may properly be brought before this Court pursuant to 42

Pa. C.S. § 5301(a).

3

## FACTUAL BACKGROUND

14.    In or around February of 2022, Plaintiff commenced her employment with Defendant in the full-time position of "Direct Support Professional" and was later promoted to "Senior Direct Support Professional."

15.    In the role of "Senior Direct Support Professional," Plaintiff was compensated an hourly wage of $18.03 per hour worked.

16.    Plaintiff routinely worked approximately 65 hours per week.

**A.    Defendant Deprived Plaintiff of Regular Compensation for Hours Worked in 2024.**

17.    On or about January 30, 2024, Plaintiff was offered a promotion to "Senior 1 Direct Support Professional" by "Residential Coordinator" Cornell Brownfield (the "Promotion").

18.    The Promotion included increased duties as well as a pay raise to $19.00 per hour (the "Pay Raise").

19.    Plaintiff accepted the Promotion, which was to take effect on February 1, 2024.

20.    The terms of the Promotion were reduced to writing and executed by Plaintiff and Defendant (the "First Agreement").

21.    In late February 2024, Plaintiff received her first post-Promotion paycheck wherein she immediately noticed that the paycheck did not reflect the Pay Raise of $19.00.  Rather, the paycheck reflected Plaintiff's former pay rate of $18.03 (the "Pay Discrepancy").

22.    Plaintiff immediately brought the Pay Discrepancy to the attention of "Executive Director," Tara Peele ("Ms. Peele").

23.    Ms. Peele informed Plaintiff that Defendant was experiencing budgetary issues but that she [Plaintiff] had technically received the Pay Raise and that she would get Plaintiff paid the difference as soon as she could.

24. For approximately two months, Plaintiff received no further communication nor remedy from Ms. Peele relative to the Pay Discrepancy.

25. During those two months, Plaintiff continued to receive the incorrect hourly rate.

26. In or around May 2024, Plaintiff again inquired to Ms. Peele about the Pay Discrepancy.

27. At this time, Ms. Peele informed Plaintiff that she had not fulfilled certain requirements to receive the Pay Raise. Notably, this was a departure from her earlier reason of "budgetary issues".

28. Ms. Peele told Plaintiff that she had to complete all of the training prior to receiving the Pay Raise and that she would have to agree to a new work location at a different home operated by Defendant (in the Mount Washington neighborhood of Pittsburgh, Pennsylvania).

29. As such, another agreement was drafted by Defendant outlining these new terms and conditions relative to Plaintiff's Promotion and Pay Raise (the "Second Agreement").

30. Plaintiff was confused by these requirements as the Promotion and Pay Raise she received in January 2024 were not tied to an obligation to change job locations or complete training before it would take effect.

31. Plaintiff declined to execute the Second Agreement.

32. Defendant was obligated to pay Plaintiff $19.00 per hour worked per the terms of the First Agreement.

33. However, Defendant failed to compensate Plaintiff the contractual hourly rate from February 1, 2024, through May 28, 2024 resulting in lost wages of $620.80.

**B.      Defendant Deprived Plaintiff of Overtime Compensation for Hours Worked in 2024.**

34.      As previously averred, Plaintiff routinely worked approximately 65 hours each week and continued to do so from February 1, 2024, through May 28, 2024.

35.      As such, Defendant was obligated to compensate Plaintiff 150% of her regular hourly rate of pay.

36.      Plaintiff's regular rate of pay during this time was $19.00 per hour under the terms of the First Agreement.  Therefore, Plaintiff's overtime should have been paid at a rate of $28.50 per overtime hour worked.

37.      However, Defendant only compensated Plaintiff $27.05 per overtime hour worked resulting in unpaid overtime wages of $556.80.

38.      As of the date of filing this Complaint, Plaintiff has not received the appropriate overtime pay for the overtime eligible recompense for the hours she dedicated to Defendant in the abovementioned timeframe.

<u>COUNT I</u>
**FAILURE REMIT WAGES
IN VIOLATION OF THE FLSA
29 U.S.C. § 201, *et seq.***

39.      Plaintiff incorporates all allegations contained in the paragraphs above, as if fully set forth at length herein.

40.      Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

41.      Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

6

29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

29 U.S.C. § 207(a)(1) (emphasis added).

42.     Moreover, The Third Circuit recognizes that liability for violations of the FLSA attaches not just to the corporate entity itself, but also to the owners, officers, and supervisory personnel of the organization at issue. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

43.     The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

44.     Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

45.    In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

46.    An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

47.    The definition of "employee" is also recognized as "exceedingly broad" as to properly effectuate of the remedial purposes of the FLSA.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

48.    29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

49.    To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 *(*quoting *Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d Cir. 1985)).

**A.      Defendant is an "Employer" Pursuant to 29 U.S.C. § 203.**

50.      Defendant extended a position-for-hire to Plaintiff with specified duties and work hours.

51.      Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant.

52.      At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

53.      At all times pertinent hereto, Defendant also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

54.      As a business entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

55.      As such, Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

**B.      Defendant is an "Enterprise Engaged in Commerce" Pursuant to 29 U.S.C. § 203.**

56.      Upon information and belief, Defendant purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania.

57.      Additionally, as part of its routine business practice, Defendant transmitted and received payments and credits from out-of-state venders by and through the use of the internet,

9

digital payment processing services that traverse state lines, and through interstate mail via the United States Postal Service.

58.	Therefore, Defendant regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

59.	Upon information and belief, Defendant has an annual dollar volume of sales in excess of $500,000.00 given the nature, size, scope, industry, and frequency of services that it has effectuated throughout Pennsylvania.

60.	Therefore, Defendant satisfies the second prong of 29 U.S.C. § 203(s)(1)(A)(i).

61.	Accordingly, Defendant is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 203(s)(1).

62.	Given Defendant's status as an "employer," Defendant was mandated to comply with the overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.	Plaintiff was an "Employee" Within the Scope of 29 U.S.C. § 203.**

63.	The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

64.	At all times relevant hereto, Plaintiff agreed to contribute her time and energy to complete meaningful workplace duties for the financial benefit of Defendant.

65.	Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from Defendant.

66.	Given Defendant's lack of objection to Plaintiff's completion of duties, Defendant "permitted" Plaintiff to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

67. Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

68. Defendant exerted significant control over the manner in which Plaintiff performed her workplace duties.

69. Defendant delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed at which Plaintiff was to complete her tasks, and designated the specific space in which Plaintiff was to perform her tasks.

70. Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on her skill given she was compensated at a determined hourly rate; all the compensation that Defendant disbursed to Plaintiff was derived from hours recorded by Defendant and their wage payment practices, and Plaintiff was dependent on these schemes of compensation for her pay.

71. Plaintiff was provided the equipment and materials necessary for the completion of all workplace tasks; the completion of her workplace tasks did not require any talents unique to Plaintiff or that were uncommon of a support professional.

72. Plaintiff worked for Defendant from February 1, 2024 to May 28, 2024 in a capacity that regularly involved Plaintiff dedicating more than 40 hours per week to Defendant's operations. Plaintiff's employment was not limited by a specific duration or term of employment.

73. The workplace duties that Plaintiff completed were an integral component of Defendant's operations given that support professionals were necessary for Defendant's business.

74.    As the factors delineated above readily illustrate, the reality of the circumstances surrounding Plaintiff and Defendant's interactions plainly indicate that Plaintiff was an employee for Defendants within the scope of 29 U.S.C. § 203.

**D.    Plaintiff was Denied an Overtime Rate of Pay Pursuant to 29 U.S.C. § 207.**

75.    At all times relevant hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent of her corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period.  29 U.S.C. § 207(a)(1).

76.    A term of Plaintiff's employment under the First Agreement was that she would be paid at an hourly rate of $19.00.  Therefore, Plaintiff's overtime rate of pay was $28.50.

77.    As set forth above, Plaintiff regularly worked in excess of 40 hours per week throughout her tenure with Defendant.

78.    However, Defendant explicitly refused to compensate Plaintiff the appropriate overtime rate per the terms of the First Agreement in violation of the FLSA.

79.    As previously averred, Defendant only compensated Plaintiff $27.05 per overtime hour worked resulting in unpaid overtime wages of $556.80.

**E.    Plaintiff is Entitled to Liquidated Damages, Attorneys' Fees, and Costs.**

80.    29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees.

81.    An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy.  *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

82.    Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in

12

damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

83. Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

84. Defendant's willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

85. Defendant is unable to meet its burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights. This is demonstrated by Defendant's willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

86. Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

87. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

88. WHEREFORE, Plaintiff, Darrah Anderson, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO REMIT WAGES
## IN VIOLATION OF THE MWA
## 43 Pa. Stat. §333.101, *et seq.*

89.     Plaintiff incorporates all allegations contained in the paragraphs above, as if fully set forth at length herein.

90.     The MWA mandates a heightened rate of pay for any hour worked in excess of forty hours per work week.  *See* 43 P.S. § 333.104.

91.     Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…."  43 P.S. § 333.104(c).

### A.      Defendant is an "Employer" Under the MWA.

92.     The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

93.     The definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the MWA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

94.     As discussed above, Defendant extended a position-for-hire to Plaintiff with specified duties, start times, and pay rates.  Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant.

14

95.     At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

96.     At all times relevant hereto, Defendant also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

97.     As a business entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 43 P.S. § 333.103(f).

98.     As such, Defendant is an "employer" pursuant to 43 P.S. § 333 and is therefore liable for violations of the MWA.

**B.      Plaintiff is an "Employee" Under the MWA.**

99.     The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

100.    The definition of "employ" is broadly defined as to "suffer or permit to work."  43 P.S. § 333.103(f).

101.    At all times relevant hereto, Defendant possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to its decisions and directives concerning where and for whom Plaintiff would provide support services.

102.    Defendant also exerted significant control over the manner in which Plaintiff performed her workplace duties.  Defendant delineated the methodologies involved in the completion of Plaintiff's duties, denoted her expected rate of productivity, and dictated the speed at which Plaintiff was to complete her tasks.

15

103. Plaintiff had no personal financial investment in Defendant's operations. Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill while performing her work duties.

104. Instead, Plaintiff was compensated at a determined hourly rate. All the compensation that was disbursed to Plaintiff was derived from hours she recorded, and Plaintiff was dependent on Defendant's timekeeping machinations for her pay.

105. Further, Plaintiff did not utilize her own equipment while working for Defendant, and Defendant supplied Plaintiff with all the supplies and equipment necessary for her to perform her job duties.

106. Nonetheless, the workplace duties which Plaintiff completed were an integral component of Defendant's day-to-day operations, as evidenced by the amount of overtime and energy that Plaintiff expended during her employment with Defendant.

107. Finally, Plaintiff was completely dependent on Defendant to provide the work she performed. Defendant operated the business, and such business was required in order for Plaintiff to perform her job duties.

108. Therefore, Plaintiff is an "employee" for purposes of the MWA.

**C.     Defendant Deprived Plaintiff of Her Overtime Rate of Pay.**

109. Given Defendant's status as an "employer" and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime rate of pay requirements of the MWA.

110. That is, at all relevant times hereto, Defendant failed to pay Plaintiff one and one-half times her corresponding contractual base rate of pay for any time worked beyond 40 hours in a seven-day period. 43 P.S. § 333.104(c).

16

111.    As previously averred, Plaintiff routinely and regularly worked in excess of 40 hours per week from February 1, 2024, through May 28, 2024.

112.    As such, Plaintiff engaged in hours of work that Defendant was legally obligated to compensate her at an overtime rate of pay.

113.    However, as averred above, Defendant explicitly refused to pay Plaintiff the appropriate rate for the overtime hours that she worked depriving Plaintiff of her lawfully owed wages.

114.    Therefore, Defendant violated 43 P.S. § 333.104(c) in failing to pay Plaintiff overtime wages.

**D.    Plaintiff is Entitled to an Award of Attorney Fees, and Costs.**

115.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with 43 P.S. §§ 333.112 and 333.113.

116.    Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

117.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

118.    WHEREFORE, Plaintiff, Darrah Anderson, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE WPCL**
**43 P.S. § 260.1 *et seq*.**

119.    Plaintiff incorporates all allegations contained in the paragraphs above, as if fully set forth at length herein.

17

120. The WPCL provides the employee with a statutory remedy to enforce her rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

121. The contract between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

122. This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action. 43 P.S. § 260.9a(b).

123. To recover under the WPCL, a plaintiff must demonstrate: "(1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation." *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at *14 (E.D. Pa. Aug. 10, 2022)

124. Further, an employee must establish "an implied oral contract between the employee and the employer". *Id.*

125. The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

126. Defendant is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

127. As averred previously, Defendant and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee." This factual reality remains true for purposes of the WPCL as well.

18

128.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

129.    Defendant has not asserted a dispute over the wages due and owing to Plaintiff and has not provided written notice of conceded or disputed wages associated with Plaintiff.

**A.    Plaintiff and Defendant Engaged in a Contract for Plaintiff's Employment in Exchange for an Hourly Rate of Pay.**

130.    In February of 2022, Defendant extended to Plaintiff, and Plaintiff and Defendant both agreed, verbally, to enter into an oral employment contract wherein Plaintiff would provide services and Defendant, following receipt of these services, would compensate Plaintiff on an hourly basis.

131.    In January of 2024, Defendant extended the Promotion and Pay Raise to Plaintiff via the First Agreement.

132.    Both Plaintiff and Defendant accepted the terms of the First Agreement wherein Plaintiff began performing her Promotion workplace activities and correspondingly Defendant agreed to compensated Plaintiff at an hourly rate of $19.00 as described above.

**B.    Plaintiff has Accrued Owed Compensation from Defendant in the Form of "Wages."**

133.    Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a.

134.    From February 1, 2024 (the effective date of the First Agreement) to May 28, 2024, Plaintiff engaged in the performance of her required duties for Defendant that was to be compensated at the hourly rate of pay commensurate with the time Plaintiff expended in performance of said duties.

135.    However, Defendant expressly refused to compensate Plaintiff the appropriate hourly rate as defined by the First Agreement.

136.    Accordingly, the Pay Discrepancy Defendant refused to pay Plaintiff constituted compensable "wages" within the purview of the WPCL.

137.    Defendant was lawfully required to compensate Plaintiff for her time worked performing her duties at no less than her regular contractual rate of pay, which at this time was $19.00 per hour.

**C.    Defendant Has Failed to Remit Plaintiff Her Owed and Accrued Wages.**

138.    As delineated above, Defendant failed to appropriately compensate Plaintiff at the contractual rate of pay for the hours she spent performing her workplace duties throughout the workweek.

139.    To date, the wages accrued pursuant to the First Agreement remain unpaid.

**D.    An Award of Liquidated Damages is Appropriate Given Defendant's Failure to Provide Plaintiff With Her Outstanding Wages.**

140.    Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permits an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure.  These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages

20

payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

141.    Per the above statutory provisions, Defendant was legally obligated to provide Plaintiff with her owed wages when she was not paid those wages. As mentioned, Defendant has refused to compensate Plaintiff with the above-mentioned wages due and owing to her for the performance of her workplace duties.

142.    As such, Defendant has violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

143.    Additionally, Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

144.    Defendant's actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of her statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

145.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

**E.    Plaintiff is Entitled to Reasonable Attorney Fees and Costs Incurred in Pursuit of Her Unpaid Wages.**

146.    In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

21

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f).

147.   As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendant's conduct described hereinabove.

148.   As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

149.   WHEREFORE, Plaintiff, Darrah Anderson, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## UNJUST ENRICHMENT
## UNDER PENNSYLVANIA COMMON LAW

150.   Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

151.   Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred. *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

152.   A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiff Conferred a Benefit Upon Defendant by Performing Her Workplace Duties and Defendant Appreciated the Benefit Plaintiff Conferred.**

153.    Plaintiff conferred a benefit to Defendant by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendant's enterprise.

154.    Plaintiff's performance of work hours was materially induced and premised on Defendant's representations that Plaintiff's compensation scheme entitled him to Regular and Overtime Pay.

155.    Defendant correspondingly appreciated the benefit of Plaintiff's workplace efforts in that Plaintiff performed various workplace tasks that financially benefited Defendant.

**B.    Defendants Accepted the Benefits Plaintiff Conferred and it is Inequitable for Defendants to Retain Those Benefits Without Compensating Plaintiff.**

156.    Defendant retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

157.    By accepting Plaintiff's labor and services, and not paying Plaintiff her contractual rate of pay, Defendant has been unduly enriched.

158.    As a matter of justice, it would be manifestly unjust and inequitable for Defendant to retain the benefit of that labor and services without paying Plaintiff due compensation.

159.    Defendant's actions described hereinabove were the direct and proximate cause of Defendant's unjust enrichment and the damages they owe Plaintiff for retaining a benefit without paying for its value.

160.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed

wages, and she is entitled to recoup the amount of the benefit she conferred upon Defendant and which Defendant unjustly retained.

161. WHEREFORE, Plaintiff, Darrah Anderson, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## JURY DEMAND

162. Plaintiff demands a trial by jury on all matters so triable.

## *AD DAMNUM* AND PRAYER FOR RELIEF

161. For the above-stated reasons, Plaintiff, Darrah Anderson, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, Community Options, Inc., and prays for relief as follows:

    (a)    Declare and find that Defendant committed one or more of the following acts:

        (i)    Violated the FLSA by not properly compensating Plaintiff for her overtime hours worked;

        (ii)    Violated the MWA by not properly compensating Plaintiff for her overtime hours worked;

        (iii)    Violated the WPCL by failing to compensate Plaintiff her contractual rate of pay; and

        (iv)    Were unjustly enriched at Plaintiff's expense;

    (b)    Award unpaid overtime wages and unpaid wages at Plaintiff's contractual hourly rate and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

    (c)    Award liquidated damages on all compensation due and accruing from the

date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

(d)     Award injunctive and other equitable relief as provided by law;

(e)     Award reasonable attorneys' fees and costs of suit incurred prosecuting these claims;

(f)     Award pre-judgment and continuing interest as calculated by the Court; and

(g)     Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  February 25, 2025          By:*/s/ Erik M. Yurkovich*
                                              Erik M. Yurkovich (Pa. I.D. No. 83432)
                                              Cynthia A. Howell (Pa. I.D. No. 325662)

                                              The Workers' Rights Law Group, LLP
                                              Foster Plaza 10
                                              680 Andersen Drive, Suite 230
                                              Pittsburgh, PA 15220
                                              Telephone: 412.910.9592
                                              Facsimile: 412.910.7510
                                              erik@workersrightslawgroup.com
                                              cynthia@workersrightslawgroup.com

                                              *Counsel for Plaintiff Darrah Anderson*

25

# **<u>VERIFICATION</u>**

I, Darrah Anderson, hereby certify that the statements in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.  This verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false statements, I may be subject to criminal penalties.

02 / 25 / 2025

Date

Darrah Anderson